IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JENNIFER ALBERO, et al., | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 1:24-cv-1100-JKB |
| WORCESTER COUNTY BOARD OF COMMISSIONERS, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WORCESTER COUNTY BOARD OF COMMISSIONERS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO BIFURCATE AND STAY DISCOVERY</u>**

Worcester County Board of Commissioners (hereinafter "the County"), one of the Defendants, by and through Karpinski, Cornbrooks & Karp, P.A., and E. I. Cornbrooks, IV, its attorneys, submits this Memorandum of Law in Support of its Motion to Dismiss or, in the Alternative, Motion to Bifurcate and Stay Discovery, and further states:

**Factual Allegations Drawn from the Complaint**[1]

On September 9, 2021, Kyle Arthur was arrested for driving under the influence of a controlled substance and booked in the Worcester County Jail ("WCJ"). ECF 1 at ¶ 22-23. According to an initial screening, Mr. Arthur admitted to Heroin and Methadone use, and suggested he would be going through withdrawal. ECF 1 at ¶ 26. On the same date, Mr. Arthur also received an initial medical screening from an employee of Defendant Wellpath, LLC (hereinafter,

---

[1] Solely for the purpose of clarifying the alleged facts in the instant motion and without conceding the veracity of any allegation in the Complaint, the County recites the following pertinent allegations drawn from the Complaint.

"Wellpath"), a limited liability company that provides healthcare services at correctional facilities. ECF 1 at ¶ 16,18, 27. Mr. Arthur informed Wellpath's employee that he was taking Methadone and had taken Fentanyl a day before, September 8, 2024. ECF 1 at ¶ 30. At 10:19 pm, an employee of Wellpath assessed Mr. Arthur again and gave him a Clinical Opiate Withdrawal Scale ("COWS") score of 5 before entering medication orders for Mr. Arthur. ECF 1 at ¶ 39. On the morning of September 10, 2021, at 5:41 am, Mr. Arthur was supposed to be given another COWS assessment, but Mr. Arthur allegedly refused treatment.[2] ECF 1 at ¶ 40. A few hours later, Mr. Arthur met with another Correctional Officer, where he reportedly asserted that he was doing fine and asked if WCJ had a Methadone program, which it did not. ECF 1 at ¶ 44-46. At 1:14 pm, Correctional Officer Cook conducted another COWS assessment and recorded that Mr. Arthur's COWS score doubled to 10, indicating more severe symptoms. ECF 1 at ¶ 49-51. Sometime after this assessment, a Wellpath employee provided Mr. Arthur with Tylenol, Imodium, and Meclizine. ECF 1 at ¶ 54. At 2:52 pm, the Correctional Officer responsible for patrolling Mr. Arthur's cell block found Mr. Arthur hanging from his bedsheets in this cell. ECF 1 at ¶ 59. The Correctional Officer attempted CPR until medical staff and EMS took over life-saving measures until 3:33 pm when Mr. Arthur was pronounced dead. ECF 1 at ¶ 60.

On April 16, 2024, a lawsuit was filed by Plaintiffs. It contains five counts. These are as follows:

    COUNT I     (Constitutional Violations Under 42 U.S.C. § 1983)
                (Claim Against All Individual Defendants)

    COUNT II    (Constitutional Violations Under 42 U.S.C. § 1983)

---

[2] Plaintiffs refute that Mr. Arthur refused treatment on the morning of September 1, 2021. ECF 1 at ¶ 41-43.

        (Claim Against Defendant Worcester County and Wellpath, LLC) [3]

COUNT III    (Violation of Article 24 of the Maryland Declaration of Rights)
                (Claim Against All Named Defendants)

COUNT IV    (Medical Malpractice)
                (Claim Against Defendant Wellpath, LLC)

COUNT V    (Wrongful Death)
                (Claim Against All Named Defendants)

## Standard of Review

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2) of the Federal Rules of Civil Procedure, or does not "state a claim to relief that is plausible on its face[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* Allegations that amount to "no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' [are] insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F.Supp.3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555)).

## Argument

Plaintiffs' claims against the County fail for various reasons discussed elsewhere herein. The County addresses Plaintiffs' constitutional claims in parts one and two. Part one addresses Plaintiffs' failure to plead the proper elements of a *Monell* claim under any viable theory. Part two

---

[3] The Complaint originally asserted this claim against Defendant Mulligan in addition to the County and Defendant Wellpath, LLC. Defendant Mulligan has since been dismissed from the case.

addresses Plaintiffs' failure to plead a discernable claim for an alleged violation of the Maryland Declaration of Rights. Part three explains that Plaintiffs' wrongful death claim should be dismissed as to the County because the County is immune. The remaining parts of this motion address the availability of punitive damages and the County's alternative request to bifurcate and stay discovery and trial with respect to any surviving *Monell* or *Longtin* claim.

**I.     Count II Fails to State a *Monell* Claim and Should be Dismissed.**

To adequately plead the elements of a *Monell* claim, a plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987).   Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the local government. *Spell*, 824 F.2d at 1389; *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability"). Third, the plaintiff must allege an affirmative causal link between the "policy or custom" and the particular injury suffered by the plaintiff. *Spell*, 824 F.2d at 1389. However, boilerplate allegations of a local government policy without factual support that a policy does exist are insufficient. *City of Canton v. Harris*, 489 U.S. 378, 386 (1989); *see also Lyles v. Prawdzik*, No. PWG-15-1056, 2016 WL 3418847, at *4 (Jun. 22, 2016). Local governments can only be held liable "where the municipality itself causes the constitutional violation at issue." *Harris,* 489 U.S. at 385.

**A.     Plaintiffs Fail to Plead a Specific Constitutional Harm to Establish *Monell* Liability.**

In the instant case, Count II of Plaintiffs' Complaint fails to plead facts alleging that the injury to Plaintiffs is the result of a constitutional harm that stems from the acts of a local government employee "taken in furtherance of some municipal 'policy or custom.'"[4] *See Milligan*, 743 F.2d at 229. Count II is silent as to what act or omission by a County employee created a constitutional violation that allegedly forms the basis of the County's alleged *Monell* liability, and Count II should be dismissed on this basis alone. ECF 1 at ¶ 86-91. Additionally, the Complaint fails to identify any express policy or decision made by a person with final policymaking authority that caused the alleged violation of Mr. Arthur's constitutional rights. *Lytle*, 326 F.3d at 471.

In the absence of reliance on an express policy or a decision by a final policymaker, Plaintiff is left to rely upon the *Monell* liability theories that the County either engaged in a practice so persistent and widespread as to constitute a custom or usage with the force of law, or that the County failed to properly train its officers such that it manifested as a deliberate indifference to the rights of citizens. *Ibid.*

### 1. Plaintiffs Fail to Plead Specific Deficiencies in Training by the County.

Plaintiffs have also failed to adequately plead a *Monell* claim based on an inadequate training theory. Plaintiffs allege that the County and Wellpath collectively "owed the Decedent a duty to train, supervise, and retain competent correctional officers and healthcare providers, including in the ability to observe that detainees or inmates are suffering from alcohol or other

---

[4] As interpreted by the Fourth Circuit, a "policy or custom" can exist in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

drug disorders." ECF 1 at ¶ 74. "Where the [*Monell*] claim is based on inadequate training, courts require a plaintiff to establish (1) 'a specific deficiency rather than general laxness or ineffectiveness in training,' and (2) 'that the deficiency or deficiencies [are] such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Williams v. Mayor, Baltimore City*, No. WMN-14-1125, 2014 WL 5707563, at *5 (Nov. 4, 2014) (quoting *Spell*, 824 F.2d at 1391).

Again, Plaintiffs conflate the actions and responsibilities of the County and Wellpath by lumping them together as the "Policymaker Defendants" while simultaneously suggesting that one or both of these defendants failed to have a policy to ensure that employees are trained to identify inmates suffering from alcohol and other drug disorders. Plaintiffs do not plead what training the County employees received or any specific deficiency in the training provided, let alone the County's knowledge and disregard of a specific deficiency. Even if it could be reasonably inferred from the alleged facts that the County's employees should have identified that Mr. Arthur had an elevated risk of committing suicide, Plaintiffs have not plead facts to show that the failure of County employees to make this identification was the result of a specific deficiency or that the County's training was such that the alleged violation was bound to happen sooner or later, rather than merely likely to happen in the long run. *See Williams* 2014 WL 5707563, at *5.

### 2. Plaintiffs Fail to Plead Instances of Prior Unconstitutional Conduct in Support of a Persistent and Widespread Practices by the County.

Even disregarding the grouping of the County and Wellpath in the text of Count II, Plaintiffs still fail to plead facts supporting prior instances of unconstitutional conduct with regard to the County. "Where plaintiffs attempt to establish the existence of a policy or custom based on alleged 'persistent and widespread' practices, courts have dismissed those claims where they have failed to plead facts of prior similar incidents." *Williams v. Mayor, Baltimore City*, No. WMN-14-

1125, 2014 WL 5707563, at *3 (Nov. 4, 2014) (quoting *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999)). "'A municipality is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees . . . Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice.'" *Smith v. Ray*, 409 Fed. Appx. 641, 650 (4th Cir. 2011) (quoting *Lytle* 326 F. 3d at 473); *see also Lyles v. Prawdzik*, No. PWG-15-1056, 2016 WL 3418847, at *4 (Jun. 22, 2016).

The Complaint avers that Wellpath "including through its subsidiaries and acquired companies . . . has been sued thousands of times, including for delegating critical decision making to unqualified persons and failing to make timely referrals for mental health evaluations", but the Complaint utterly fails to identify lawsuits or purported injuries caused or alleged to be caused **by the County**, other than those concerning Mr. Arthur. ECF 1 at ¶ 78-79.[5]

B. **Plaintiffs Fail to Plead the Element of Causation to Establish *Monell* Liability.**

The text of Count II of Plaintiffs' Complaint references the County and Wellpath together as the "Policymaker Defendants" when *Monell* liability only exists "where the municipality itself causes the constitutional violation at issue." ECF 1 at ¶ 73-85; *Harris,* 489 U.S. at 385 (citing *Monell,* 436 U.S. at 694-95). Plaintiffs have failed to plead the element of causation by failing to identify which actions and constitutional violations they contend are those of the County, Wellpath,

---

[5] To establish this theory of liability, a plaintiff must allege a "'persistent and widespread' practice so longstanding and pervasive as to indicate that 'policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference.'" *Krell v. Queen Anne's County*, No. JKB-18-637, 2018 WL 6523883, at *16 (D. Md. Dec. 12, 2018) (quoting *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 401 (4th Cir. 2014)). While Plaintiffs' have plead that Wellpath has been sued for similar conduct in the past, the Complaint does not allege that any of Wellpath's allegedly unconstitutional conduct occurred at the County's property or that the County engaged in the unconstitutional deprivation of medical care for any detainee other than Mr. Arthur. "It is not enough to allege the instance at hand and infer that it is part of a broader practice." *Krell*, 2018 WL 6523883, at *16; *see also Walker v. Prince George's County*, 575 F.3d 426, 431 (4th Cir. 2009).

or the County and Wellpath together. *Ibid.* Further, Plaintiffs' failure to plead how each of these defendants violated Mr. Arthur's rights violates the short and plain statement requirement of Rule 8 of the Federal Rules of Civil Procedure.

In sum, Plaintiffs have failed to plead a clear constitutional violation that would form the basis of their *Monell* claim. For the reasons stated, the Court should dismiss Count II as to the County with prejudice.

II. **Count III Should be Dismissed Against the County because it Fails to Assert Any Claim.**

Count III of Plaintiffs' Complaint alleges that all defendants, deprived Mr. Arthur of life and liberty in violation of Article 24 of the Maryland Declaration of Rights when they knowingly failed to provide Mr. Arthur with access to detox services; that they knew Mr. Arthur was at an increased risk for suicide and failed to take the necessary actions to protect his safety; and all defendants' knowing disregard was malicious and with deliberate indifference and conscious disregard for Mr. Arthur's welfare. ECF 1 ¶ 86-91. The phrasing of Count III with regard to the County is ambiguous concerning whether Plaintiffs' assert Count III as a respondeat superior claim on the basis that the County is vicariously liable for the state constitutional violations of its employees or a *Longtin* claim on the basis that the County itself violated Mr. Arthur's constitutional rights through a policy or custom of failing to train, supervise, discharge or discipline negligent or incompetent employees. The Complaint states:

> "All actions of Defendants occurred within the course of their duty and the scope of their employment or agency as employees of Worcester County or Wellpath or as employees contracted to act on their behalf and Maryland's constitution and its **principles of respondeat superior liability obligate counties and municipalities to avoid constitutional violations by their employees and contract-employees through, among other things, adequate training and supervision and by discharging or disciplining negligent or incompetent employees/contract employees**."

ECF 1 at ¶ 88 (bold added). The Complaint proceeds to state that Defendants "deprived Mr. Arthur of its life and liberty," "knowingly failed to provide Mr. Arthur with access to detox services . . . and failed to provide adequate monitoring," and that "Defendants' actions and omissions caused Mr. Arthur's suicide…." ECF 1 at ¶ 89-91.

The County acknowledges that Maryland law recognizes that municipalities may have respondeat superior liability for state law constitutional violations committed by its employees. However, the elements of a state law respondeat superior claim and a *Longtin* claim are different, and the facts and allegations plead in Count III are ambiguous to the point that it cannot be said that Plaintiffs have sufficiently plead either claim as to the County. *See DiPino v. Davis*, 354 Md. 18, 51-52, 729 A.2d 354, 372 (1999) (establishing municipal respondeat superior liability for state constitutional violations committed by employees acting within the scope of their employment); *see also Prince George's Cnty. v. Longtin*, 419 Md. 450, 19 A.3d 859 (2011) (establishing a state constitution analog to a *Monell* claim). As such, Count III should be dismissed for failing to plead a proper claim against the County because it violates the short and plain statement requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure.

To the extent the Court finds that Count III asserts *Longtin*-type claim, the County incorporates and reasserts its recitation of law addressing Count II of the Complaint with regard to the allegations in Count III. Although Count II seeks to allege a federal constitutional claim under *Monell*, the same logic applied in Count II applies in Count III because *Longtin* claims are essentially Maryland's version of *Monell* claims. *See Palma v. Montgomery Cnty., Maryland*, 598 F. Supp. 3d 288, 297 n. 5 (D. Md. 2022) ("Thus, *Monell* and *Longtin* claims rise or fall together, and the Court need not undertake an independent analysis of the sufficiency of the latter.").

Accordingly, Count III should be dismissed for failure to state a claim because the well plead facts do not assert either a clear respondeat superior claim or *Longtin*-type claim because the facts and allegations addressing the County's liability for state constitutional violations are ambiguous. To the extent the Court finds that Count III should be construed as a *Longtin* claim based on its wording, Count III should still be dismissed as to the County for failing to state a claim because Count III contains little more than a bald allegation that the injury to Plaintiffs resulted from the County's failure to discipline its employees. In the context of a Longtin claim, the Plaintiffs have failed to plead facts to show that the alleged violation of Article 24 of the Maryland Declaration of Rights resulted from an express policy, resulted from a decision by a person with final policymaking authority, resulted of an omission in training such that it would manifest as deliberate indifference to citizens; or that it resulted from a widespread custom or policy.

**III.   Count V of Plaintiffs' Complaint Should be Dismissed as to the County because the County has Common Law Immunity to this Claim.**

Count V of Plaintiff's Complaint, captioned "Wrongful Death" alleges that "as the direct and proximate result of breaches in the standard of care and the intentional and willful and wanton conduct in the previous paragraphs, Plaintiff Jennifer Albero suffered damages, including loss of society and affection, loss of support, and other emotional distress related to the loss of her son." ECF 1 at ¶ 99. Under Maryland law, Wrongful Death actions may be maintained against a person "whose wrongful act causes the death of another." Md. Code Ann., Cts. & Jud. Proc. § 3-902. A wrongful act is "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." *Id.* at § 3-901(e).

Plaintiffs' Wrongful Death claim is based on the "actions and omissions herein" and "as a direct and proximate result of the breaches in the standards of care" fails to state a claim as to the

County because the County is immune from non-constitutional torts. See Estate of Taylor v. Baltimore County, Case No. RDB – 22- 2459, 2024 WL 308953 * 3 (D. Md. Jan. 26, 2024) (finding Baltimore County was entitled to governmental immunity for claims arising out of the operation of a police department and immune from nonconstitutional tort claims – wrongful death and survivorship). Additionally, the operation of a county jail is unquestionably a government activity. *See McMahon v. Cnty. Comm'rs of Kent Cnty.*, No. CIV. JFM-13-490, 2013 WL 2285378, at *3 (D. Md. May 21, 2013) (dismissing tort counts asserted against the County Commissioners of Kent County because the operation of the detention center was "unquestionably a governmental activity.")

To the extent the Court reads Count III as asserting that the County independently committed the tort of Wrongful Death, Plaintiffs' fail to state a claim because "[u]nder Maryland law, a county 'is immune from liability for tortious conduct committed while the entity was acting in a governmental capacity.'" *DiPino*, 729 A.2d at 370. This immunity applies when the theory of the local government's liability is based on direct acts by the government. *See Clark v. Prince George's Cty.*, 65 A.3d 785, 790 (Md. Ct. Spec. App. 2013) (finding that a county had immunity from a negligent hiring claim).

Further, to the extent Count V can be interpreted as asserting a vicarious liability claim against the County for the actions of its employees, this theory also fails. Local government immunity also applies when a claim is based on the theory that the local government was vicariously liable for actions by its employees engaged in a governmental function. *DiPino*, 729 A.2d at 370 (finding immunity from a claim of malicious prosecution against a county based on the conduct of its police officer). In sum, Count V is barred as to the County by governmental immunity.

**IV.     Punitive Damages are not Available to Plaintiff under Counts II, III, and V.**

All three Counts asserted against the County request that Plaintiffs be awarded "punitive damages to the fullest extent permitted." ECF 1 at ¶ 85, 91, 99.  It is well settled that punitive damages are not available a §1983 claim brought against a local government and punitive damages are not available as to the County in Counts III and V under Maryland law. [6, 7]

**V.     In the Alternative, Claims II and III Should be Bifurcated for the Purpose of Discovery and Trial.**

If the Court determines that dismissal is not appropriate as to Count II, the proceedings against the County with regard to Count II should be bifurcated and all discovery stayed with respect to this claim. Similarly, if the Court determines that dismissal is not appropriate as to Count III and the Court further finds that Count III asserts a *Longtin*-type claim, then Count III should

---

[6] The Supreme Court of the United States in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748 (1981), analyzed this issue and determined that municipal immunity to punitive damages was well established by 1871, and that Congress would have specified its intent to abolish this doctrine during the passage of 42 USC §1983 if that was Congresses intent at the time. *Id.* at 262-63.  Congress failed to change the standards for awarding damages under the Statute and, accordingly, the Supreme Court held that municipalities maintain their common law immunity to punitive damages for actions brought under 42 U.S.C. §1983.

[7] Maryland statutory law expressly disallows the assessment of punitive damages against a county under Section 5–303(c)(1) of the LGTCA, which states that "[a] local government may not be liable for punitive damages." Md. Cts & Jud. Proc. Art. § 5–303(c)(1).  In *Robles v. Prince George's Cnty., Maryland*, 302 F.3d 262, 273 (4th Cir. 2002) the Fourth Circuit, when interpreting the LGTCA, found that this portion of the statute extended beyond a county's liability to indemnify its employees but also applied as a prohibition on claims asserted directly against a county or other local government.

Regarding the wrongful death claim, in the case of *Cohen v. Rubin*, 55 Md. App. 83, 96, 460 A.2d 1046, 1054 (1983), the court determined that punitive damages are not recoverable in suits by personal representatives under Maryland's Wrongful Death Statute, Md. Cts. & Jud. Proc. Art. § 3-904, because Maryland has historically disfavored punitive damages in wrongful death claims and the relevant statute does not provide for punitive damages as a remedy. *Id.* at 100-2; *see also Carter v. Lindsay Corp.*, No. CV DKC 21-0311, 2022 WL 394461, at *7 (D. Md. Feb. 9, 2022) ("In Maryland, punitive damages are not recoverable in cases arising under the wrongful death statute." (internal citations omitted)).

also be bifurcated and all discovery stayed with respect to this claim as well. Under Rule 42(b) of the Federal Rules of Civil Procedure, this Court may bifurcate claims to (1) promote convenience, (2) avoid prejudice, or (3) expedite and economize the judicial proceedings. *See Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) ("[T]he Court finds that the interests of convenience, the avoidance of prejudice, as well as expedition and economy, will be best served by severing the trial of issues pertaining to [p]laintiff's claims against the active [d]efendants from those he makes against the inactive [d]efendants."); *see also Saltz v. City of Frederick, Md.*, 538 F. Supp. 3d 510, 561 (D. Md. 2021) ("Because of the secondary nature of a municipality on potential liability under § 1983, courts have frequently bifurcated discovery and or trial so that cases proceed first with trial against the individual defendant(s) alleged to be primarily liable."). "These cases are good candidates for bifurcation because when no government employees are found liable, no subsequent trial of the municipality is necessary." *Beasley v. Kelly*, No. DKC 10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010).

Bifurcating Plaintiffs' federal and state constitutional claims against the County will serve the interests of justice and judicial economy. Requiring the County to be involved in discovery along with the individually named defendants will result in unnecessary consumption of resources by drastically expanding the scope of pre-trial discovery and potentially subjecting the parties to contentious discovery disputes. In addition, the introduction of policy evidence and testimony at trial in conjunction with evidence regarding the alleged unconstitutional actions of the County's employees poses a fair risk of confusing the jury and prejudicing all defendants. Bifurcating *Monell* and *Longtin* claims is often beneficial because the resolution of section 1983 claims against individual defendant officers tends to inform the resolution of claims against local government entities. *See Hayat v. Diaz*, No. 20-cv-02994-LKG 2022 WL 17342049, at *3 (D. Md. Nov. 30,

2022). If the underlying employees are not found to have committed a constitutional violation, the local government entity itself would not be liable for having an unconstitutional policy or custom. If the underlying employees are found liable, but the judgment against them is satisfied, this would also resolve the case as to the municipality because plaintiffs are not entitled to double recovery.

For these reasons, to the extent the Count permits Plaintiffs' *Monell* and any *Longtin*-type claims to proceed against the County, the interests of the court and the parties would be served by bifurcating and staying discovery of these claims until the resolution of Plaintiffs' claims against the County's employees.

## Conclusion

For the foregoing reasons, the Worcester County Board of Commissioners, one of the Defendants, respectfully requests that this Honorable Court dismiss Plaintiffs' Claims II, III, and V or, in the alternative, it is requested that the Court bifurcate and stay all discovery and trial of these claims as to the Worcester County Board of Commissioners, and grant any such other relief as this cause may demand.

Respectfully submitted,

Karpinski, Cornbrooks & Karp, P.A.

By:     /s/ E. I. Cornbrooks, IV
E. I. Cornbrooks, IV, #28296
120 E. Baltimore Street, Suite 1850
Baltimore, Maryland 21202
Tel: 410-727-5000
scornbrooks@bkcklaw.com
*Attorney for Defendant*
*Worcester County Board of Commissioners*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2024, a copy of the foregoing was electronically filed, with notice to Plaintiffs' counsel, and mailed to the remaining parties' last known addresses:

Thomas W. Keilty, III
Keilty Bonadio
1 South Street, Suite 2125
Baltimore, MD 21201
*Counsel for Plaintiffs*

Daniel A. Griffith
Whiteford, Taylor and Preston, LLP
600 North King Street, Suite 300
Wilmington, DE 19801
*Counsel for Defendant Voeller & Defendant Wellpath, LLC*

Kevin Karpinski
Karpinski, Cornbrooks & Karp, P.A.
120 E. Baltimore Street, Suite 1850
Baltimore, Maryland 21202
*Counsel for Defendant Cook*

Michael Rynd
Karpinski, Cornbrooks & Karp, P.A.
120 E. Baltimore Street, Suite 1850
Baltimore, Maryland 21202
*Counsel for Defendant Thompson*

Raymond R. Mulera
Local Government Insurance Trust
7225 Parkway Drive,
Hanover, MD 21076
*Cousnel for Defendant Campbell*

William C. Dickerson
Local Government Insurance Trust
7225 Parkway Drive,
Hanover, MD 21076
*Counsel for Defendant Townsend*

Christine Watson
Serve at:
2 Wisconsin Circle, Suite 700
Chevy Chase, MD 20815
*Defendant, Pro Se*

Meagan Hearn
Serve at:
2 Wisconsin Circle, Suite 700
Chevy Chase, MD 20815
*Defendant, Pro Se*

Alexis Littlepage
111 Overlook Drive, Apt. 2B
Salisbury, MD 21804
*Defendant, Pro Se*

    /s/ E. I. Cornbrooks, IV
*Counsel for Defendant Worcester County Board of Commissioners*